**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAY JOHNSTON,<br>*Address Filed under Seal*<br><br>Plaintiff,<br><br>-against-<br><br>UNITED STATES OF AMERICA,<br>*c/o U.S. Attorney's Office, District of Columbia, 601 D. Street NW, Washington, DC 20530,*<br><br>MERRICK GARLAND, individually,<br>*601 D. Street NW, Washington, DC 20530*<br><br>CHRISTOPHER WRAY, individually,<br>*601 Peachtree Battle Ave, NW Atlanta, GA 30327*<br><br>MATTHEW GRAVES, individually,<br>*601 D. Street NW, Washington, DC 20530*<br><br>and<br><br>JOHN DOES 1-25, individually,<br>*c/o Federal Detention Center Philadelphia, 700 Arch Street, Philadelphia, PA 19106,*<br><br>Defendants. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff JAY JOHNSTON (hereinafter, "Plaintiff" or "Johnston") by and through his attorneys, Raiser, Kenniff & Lonstein, P.C. brings this Complaint and respectfully alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for damages arising from Defendants' violations of Plaintiff's constitutional rights and for tortious conduct actionable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

2. Plaintiff was targeted and punished because of his constitutionally protected expressive and associational activity as a member of the protesters who gathered at the Capitol on January 6th, 2021 (hereinafter, the group of people prosecuted for their activities at or near the Capitol Building on January 6th, 2021, will be referred to as the "January 6th Defendants"). He was subjected to selective prosecution, intentional infliction of emotional distress, abuse of process, and suffered significant reputational harm, including harm to his career and employment prospects, that continues to this day and, upon information and belief, will continue into the future.

3. As a result of the Defendants' campaign of portraying Plaintiff as a violent criminal and insurrectionist, and of allegedly misusing law-enforcement process to impose reputational and occupational punishment beyond any legitimate adjudicative purpose, Plaintiff has been definitively "blacklisted" from Hollywood and has been forced out of his established career as a voice and screen actor. Since 2021, Plaintiff has instead had to find intermittent and temporary work as a handyman to support himself and his family, including his wife and his disabled daughter.

4. Plaintiff now brings this lawsuit for the damages he has suffered as a result of the government's campaign to publicly stigmatize and discredit him and to misuse law-enforcement process against him, for his political beliefs and First Amendment-protected activity.

## **JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(b).

6. Jurisdiction over Plaintiff's constitutional claims against individual federal officers is conferred by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), and its progeny.

7. Jurisdiction over Plaintiff's claims against defendant UNITED STATES OF AMERICA (the "United States") is conferred by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(e) and 1402(b) because the act or omission complained of occurred in this District and because substantial events giving rise to Plaintiff's claims occurred in this District.

9. On or about August 12, 2025, Plaintiff transmitted an administrative Notice of Claim to the United States Department of Justice ("DOJ") setting forth the factual basis for his claims and demanding a sum certain. More than six months elapsed without final denial.

10. As of the date of this Complaint, the United States failed to settle or issue a final denial of Plaintiff's claims within the statutory period. More than 180 days had elapsed, resulting in constructive exhaustion under 28 U.S.C. § 2675(a).

## **PARTIES**

11. Plaintiff is a United States citizen and resident of Los Angeles County, State of California.

12. Defendant UNITED STATES OF AMERICA ("United States") is sued pursuant to the FTCA for tortious acts and omissions of federal employees acting within the scope of their employment.

13. Defendant MERRICK GARLAND is sued in his individual capacity for actions taken while serving as Attorney General of the United States.

14. Defendant CHRISTOPHER WRAY is sued in his individual capacity for actions taken while serving as Director of the Federal Bureau of Investigation.

15. Defendant MATTHEW M. GRAVES is sued in his individual capacity for actions taken while serving as United States Attorney for the District of Columbia.

16. JOHN DOES 1-25, individually, include but are not limited to unknown agents, officers, employees, supervisors, policymakers, prosecutors, public-affairs personnel, and other officials of the United States Department of Justice, the United States Attorney's Office for the District of Columbia, and/or the Federal Bureau of Investigation who personally participated in, directed, approved, ratified, supervised, or knowingly permitted the investigative, public-facing, charging, prosecutorial, search, arrest, or other law-enforcement actions complained of herein.

## **FACTUAL ALLEGATIONS**

17. Prior to the events of January 6th, 2021, Plaintiff Jay Johnston was an established, in-demand voice and screen actor who appeared in, amongst other shows, all eleven seasons of the Emmy-Award winning hit series *Bob's Burgers*.

18. On January 5th, 2021, Plaintiff traveled from his home in Los Angeles, California to Washington, D.C., to exercise his First Amendment rights by attending a pro-Trump rally at the Capitol.

19. The next morning, January 6th, 2021, Plaintiff attended a speech by President Trump at the Ellipse in Washington, D.C.

20. Plaintiff did not don paramilitary gear or have weapons on his person. He wore an otherwise ordinary and unassuming outfit of gray pants, tan shoes, a camouflage-patterned shirt, a camouflaged-pattered neck gaiter (a routine accessory as a face-mask-like face covering during the COVID-19 pandemic), and a black leather jacket.

21. Later that day, a joint session of the United States Congress convened at approximately 1:00 p.m. to certify the Electoral College vote of the 2020 Presidential Election.

22. Amid the chaos of the ensuing events, Plaintiff found himself by the Tunnel leading into the Capitol Building on the Lower West Terrace, where he was one among many other individuals.

23. While the conduct within the Tunnel was chaotic, Plaintiff did not enter the Capitol Building, did not bring weapons, and did not strike an officer. The United States later overstated Plaintiff's role in the ensuing actions around the Tunnel and misleadingly characterized Plaintiff as a significant participant in the chaotic acts occurring around the Tunnel.

## DEFENDANTS KNEW PLAINTIFF'S IDENTITY AND AVAILABILITY YET CONTINUED TO EMPLOY PUBLIC-FACING INVESTIGATIVE TECHNIQUES

24. By no later than March 8, 2021, Defendants knew Plaintiff's identity, knew he was represented by counsel, and knew that counsel had affirmatively identified Plaintiff as the individual depicted in the FBI's public "Seeking Information" materials. Defendants likewise knew

Plaintiff's residence and possessed the ability to communicate with him through counsel at any time.

25. Despite possessing that information, Defendants did not request that Plaintiff voluntarily appear for questioning, seek his voluntary surrender, or otherwise attempt to secure his cooperation through ordinary investigative means.

26. Instead, Defendants continued publicly disseminating Plaintiff's image through FBI seeking-information channels, maintained Plaintiff as a public investigative target, and executed a highly visible search of Plaintiff's residence, ignoring Plaintiff's direct request that no search be conducted due to the presence of Plaintiff's disabled daughter in Plaintiff's home.

27. During the aforementioned search, Defendants detained Plaintiff outside his home in his underwear while neighbors observed and were interviewed, and then departed without arresting him.

28. Having completed the search and confirmed Plaintiff's identity, residence, and continued availability, Defendants nevertheless waited more than two additional years before initiating criminal charges. During that entire period, Plaintiff remained openly at his known residence and made no effort to evade law enforcement or conceal his whereabouts.

29. When Defendants ultimately elected to file criminal charges in June 2023, Plaintiff voluntarily surrendered.

30. Upon information and belief, the public dissemination of Plaintiff's identity, the execution of the search warrant, the manner in which the search was conducted, and the prolonged delay before prosecution were not reasonably necessary to secure Plaintiff's appearance but instead advanced Defendants' broader objectives of public stigmatization, deterrence, and reputational punishment.

31. The criminal action proceeded in the United States District Court, District of Columbia, under Case No. 23-cr-237.

32. A final superseding indictment was entered on June 27, 2024. Plaintiff was charged with violation of:

a. 18 U.S.C. § 231(a)(3), civil disorder and aiding and abetting;

b. 18 U.S.C. § 1752(a)(1), entering and remaining in a restricted building or grounds;

c. 18 U.S.C. § 1752(a)(2), disorderly and disruptive conduct in a restricted building or grounds;

d. 40 U.S.C. § 5104(e)(2)(E), impeding passage through the Capitol grounds or building.

33. On July 8, 2024, Plaintiff pled guilty to a single charge of obstructing officers during a civil disorder in violation of 18 U.S.C. § 231(a)(3), in connection with his presence at and his actions in the Tunnel. All other charges were dropped by the United States government.

34. On October 28, 2024, Plaintiff was sentenced to twelve months and one day incarceration. Approximately two months after his sentencing, Plaintiff was directed to report to the designated correctional facility on February 6, 2025.

35. Plaintiff was pardoned by President Trump and the entire indictment against Plaintiff was dismissed on January 21, 2025.

36. Upon information and belief, Defendants and/or their agents used facially lawful investigative and criminal processes, including public seeking-information procedures, search process, arrest process, charging process, and related law-enforcement communications, for collateral purposes beyond the ordinary and proper ends of investigation, evidence preservation, securing Plaintiff’s appearance, or adjudicating criminal allegations.

37. Upon information and belief, once Plaintiff's identity and availability were no longer in doubt, the continued public dissemination of his image, the manner in which the search was executed, and the prolonged delay before prosecution served collateral objectives.

38. Those collateral objectives included publicly branding Plaintiff as a dangerous, violent, and extremist participant in the January 6th events; increasing reputational and occupational pressure on Plaintiff because of his political viewpoint and public profile; encouraging private parties in Plaintiff's industry and community to ostracize him before adjudication; and deterring Plaintiff and others from engaging in similar protected political expression and association.

39. The manner in which process was used against Plaintiff was not reasonably necessary to any legitimate law-enforcement objective and was intended to produce public stigma, reputational damage, economic pressure, and emotional distress separate and apart from any ordinary consequence of a lawful investigation or prosecution.

40. As a result of Defendants' campaign of public stigmatization and Plaintiff's degree of fame from his career in the entertainment industry, Plaintiff received heavier media coverage than many of the other January 6th Defendants. This publicity ensured that Plaintiff would not be able to continue his lucrative career in the entertainment industry. In addition, the heightened media attention caused Plaintiff's young daughter, who has special needs, to become ostracized from her social activities. Plaintiff's daughter was forced to unenroll from a theater program for children with special needs.

## AS AND FOR A FIRST CAUSE OF ACTION

*Abuse of Process - FTCA*

41. Plaintiff repeats and realleges all prior paragraphs as though fully set forth herein.

42. Defendant United States, by and through its investigative and law-enforcement officers acting within the scope of their employment, used process against Plaintiff, including search process, arrest process, criminal process, public seeking-information procedures, and related law-enforcement communications.

43. By March 2021, Defendants had achieved the ordinary objectives of the FBI's public seeking-information campaign as it related to Plaintiff. They knew who Plaintiff was, knew where he lived, knew he was represented by counsel, and knew he could be reached through counsel. Nevertheless, Defendants continued publicly portraying Plaintiff as an unidentified suspect, executed a highly public search of his residence without arresting him, and waited more than two years before initiating criminal proceedings.

44. The collateral purposes for which such process was used included, but were not limited to, publicly stigmatizing Plaintiff as a dangerous extremist and insurrectionist; damaging Plaintiff's professional reputation and employability; pressuring Plaintiff through reputational and economic harm; punishing Plaintiff for his political viewpoint and expressive association; and deterring similarly situated individuals from engaging in protected political activity.

45. The aforementioned misuse of process included the prolonged public association of Plaintiff with FBI seeking-information materials despite his early identification and availability through counsel; the humiliating manner in which search process was executed at Plaintiff's home; the interview of Plaintiff's neighbors in a manner foreseeably calculated to degrade Plaintiff's reputation; and the use of criminal process and related public-facing law-enforcement communications to magnify reputational injury beyond any legitimate adjudicative purpose.

46. Defendant United States, by and through its employees and agents, acted intentionally, maliciously, and/or with reckless disregard of the high probability that the misuse of process would cause Plaintiff reputational, emotional, and economic injury.

47. As a direct and proximate result of Defendant's abuse of process, Plaintiff suffered severe emotional distress, reputational harm, loss of professional opportunities, diminished earning capacity, legal and related expenses, and other damages in an amount to be proven at trial.

## AS AND FOR A SECOND CAUSE OF ACTION

*Fifth Amendment Equal Protection*
*Selective Enforcement and Selective Prosecution* – Bivens

48. Plaintiff repeats and realleges each and every preceding allegation as though fully set forth herein.

49. The Due Process Clause of the Fifth Amendment to the United States Constitution incorporates principles of equal protection and prohibits federal officials from intentionally discriminating against persons because of their political viewpoints, expressive associations, or other constitutionally protected activity.

50. Plaintiff engaged in constitutionally protected expressive and associational activity, including attending political events and demonstrations in Washington, D.C. on January 5 and January 6, 2021.

51. Defendants MERRICK GARLAND, CHRISTOPHER WRAY, MATTHEW GRAVES, and JOHN DOES 1-25 knew of Plaintiff's political expression, political association, and perceived political viewpoints.

52. Upon information and belief, Defendants adopted, implemented, encouraged, supervised, approved, or knowingly permitted investigative and prosecutorial practices that subjected Plaintiff and other January 6 defendants to materially different treatment than similarly

situated participants in other episodes of political unrest, civil disorder, or politically charged public demonstrations.

53. Upon information and belief, Defendants selected Plaintiff for unusually aggressive investigative and prosecutorial treatment because of his actual or perceived political viewpoints, political associations, and participation in a politically disfavored movement.

54. Such differential treatment included, but was not limited to;

i. the continued public dissemination of Plaintiff's image through FBI seeking-information, "Be On the Lookout," "Most Wanted," or similar channels after federal authorities had received information identifying Plaintiff and establishing his availability through counsel;

ii. the execution of a highly visible search of Plaintiff's residence despite Defendants' knowledge that Plaintiff had identified himself through counsel and could be contacted through counsel;

iii. the use of public-facing investigative and law-enforcement communications in a manner designed or foreseeably likely to maximize reputational injury;

iv. the prolonged maintenance of Plaintiff as a public target of investigation despite his known identity and availability; and

v. the institution and continuation of criminal proceedings against Plaintiff as part of a broader policy of imposing extraordinary reputational, professional, economic, and personal consequences upon January 6th Defendants; and

vi. delaying Plaintiff's prosecution for more than two years after Defendants knew his identity, residence, and availability through counsel while

continuing to subject him to public investigative scrutiny and reputational injury before ultimately accepting his voluntary surrender.

55. Upon information and belief, Defendants' actions were motivated, in whole or in part, by hostility toward, disagreement with, or discriminatory animus against Plaintiff's political viewpoints, expressive associations, and perceived political affiliations.

56. Defendants' actions lacked a sufficiently compelling governmental justification and were not narrowly tailored to serve any legitimate governmental objective.

57. As a direct and proximate result of Defendants' conduct, Plaintiff suffered reputational injury, loss of professional opportunities, loss of income and earning capacity, emotional distress, humiliation, damage to personal and professional relationships, attorneys' fees and costs, and other damages according to proof.

58. The conduct of Defendants GARLAND, WRAY, GRAVES, and JOHN DOES 1-25 violated Plaintiff's rights under the Fifth Amendment to the United States Constitution.

59. As a result of the afore-described conduct, Plaintiff suffered severe emotional distress, including anxiety, trauma, humiliation, sleep disturbance, and loss of professional opportunities.

**AS AND FOR A THIRD CAUSE OF ACTION**
*Intentional Infliction of Emotional Distress - FTCA*

60. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

61. Defendant the United States, by and through its employees and agents, engaged in extreme and outrageous conduct, including publishing Plaintiff's picture through FBI public-facing seeking-information, "Most Wanted," "Be On the Lookout," or similar channels and raiding Plaintiff's home in a manner meant to humiliate Plaintiff.

62. Defendant United States, by and through its employees and agents, acted intentionally or with reckless disregard of the high probability that their conduct would cause severe emotional distress.

63. The afore-described conduct was the proximate cause of Plaintiff's injuries.

64. As a result of the afore-described conduct, Plaintiff suffered severe emotional distress, including anxiety, trauma, humiliation, sleep disturbance, and loss of professional opportunities.

**WHEREFORE**, and for the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor,

a. Awarding compensatory damages to the Plaintiff, plus post-judgment interest;

b. Awarding punitive damages to the Plaintiff;

c. Awarding Plaintiff reasonable costs, disbursements, and attorney's fees to the extent permitted by law; and

d. Awarding any such other and further relief as this Court finds is required in the interest of justice.

Dated: September 15, 2026
New York, New York

Respectfully submitted,

**RAISER, KENNIFF & LONSTEIN, P.C.**

Respectfully submitted,

/s/*Alexander Lonstein*
Alexander Lonstein
RAISER, KENNIFF &
LONSTEIN, P.C.
99 Park Avenue, Suite 1530
New York, NY 10016
alexander@rkl.law